UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PATTY KING,<br><br>　　　　　　　　Plaintiff,<br>　v.<br><br>DARREN ROBERTSON, an individual, QUAIL SURGICAL AND PAIN MANAGEMENT CENTER, LLC, a Nevada limited liability company, NORTHERN NEVADA ASC MANAGEMENT, LLC, a Nevada limited liability company, AND DOES 1-10 INCLUSIVE, BLACK AND WHITE BUSINESS ENTITIES I-X, INCLUSIVE,<br><br>　　　　　　　　Defendants. | Case No. 3:21-cv-00471-ART-CLB<br><br>ORDER |

Pending before the Court in this removed employment action are Defendants' Motion to Compel Arbitration and to Dismiss the Action, or, Alternatively, to Stay the Action Pending Arbitration. (ECF Nos. 10; 11.)[1] Also pending are Plaintiff's motion to Strike (ECF No. 26) and Plaintiff's Motion for Leave to File a Supplemental Memorandum (ECF No. 29). Discovery has been stayed by Magistrate Judge Baldwin, who found that "there is a reasonable possibility or probability that the district judge will grant the motion to compel arbitration." (ECF No. 24.) Judge Baldwin vacated the Early Neutral Evaluation on the same basis. (*Id.*) The Court finds that the parties' contract requires them to submit to arbitration, and that this matter should be stayed while the parties engage in arbitration.

---

[1] The motions appear to be identical though, in CM/ECF, ECF No. 10 is docketed as Motion to Compel Arbitration and ECF No. 11 is docketed as Motion to Dismiss.

## I. Background

Plaintiff Patty King ("King"), a nurse, was hired by Defendant Quail Surgical and Pain Management Center, LLC ("Quail") in 1998 and became an employee of Northern Nevada ASC Management ("Northern Nevada") when they acquired 51% of Quail's stock in 2016. (ECF No. 6.) On March 25, 2016, King signed a letter accepting an offer of continued employment with Northern Nevada effective upon Northern Nevada's acquisition of Quail, which was anticipated to be completed in June 2016. The offer letter referenced an arbitration agreement ("the Agreement") that is the subject of the pending motions. On the same date as King signed the offer letter referencing the Agreement, King signed the Agreement, agreeing to arbitrate any employment-related disputes with Quail or affiliates, subsidiaries, or parent companies.

King broadly asserts that the Agreement is a "false document" and "obviously forged" (ECF No. 17 at 5) but also concedes that she read and signed the fourth page, which includes the signature line, of the Agreement. King asserts by way of declaration that to the "best of my recollection I never was presented with nor saw the other pages of an agreement. (Exhibit 1.)[2] King does not dispute that the signature page of the Agreement contains her handwriting, name, signature, and the date that she signed the document. The signature page is clearly identified as the fourth page of an arbitration agreement. (Exh. 1-A.)[3] The signature page references "This Agreement" throughout, contains a paragraph describing an employee's right to opt out of arbitration, and states that an employee has the right to consult with counsel. (*Id.*) More specifically, the signed signature page explains that "[i]n order to Opt Out of Arbitration, the Employee

---

[2] The exhibit referenced accompanies Plaintiff's opposition to Defendants' Motion to Compel Arbitration and to Dismiss the Action, or Alternatively, to Stay the Action Pending Arbitration. (ECF No. 17.)
[3] The exhibit referenced accompanies Defendants' Motion to Compel Arbitration and to Dismiss the Action, Or, Alternatively, to Stay the Action Pending Arbitration. (ECF No. 10.)
…

2

must submit a signed and dated statement on an 'Alternative Resolution for Conflicts Agreement Opt Out Form' ('Form') that can be obtained from the Company's local or corporate Human Resources Department or online at www.uhsinc.com/careers/ARC Program." (*Id.*) The signed signature page explains that the "signed and dated Form must be returned to the Human Resources Department within 30 days of the Employee's receipt of this Agreement." (*Id.*) The signed signature page also explains that an "Employee who timely opts out as provided in this paragraph will not be subject to any adverse employment action as a consequence of that decision and may pursue available legal remedies without regard to this Agreement." (*Id.*) The signed signature page also explains that "[s]hould an Employee not opt out of this Agreement within 30 days of the Employee's receipt of this Agreement, continuing the Employee's employment constitutes mutual acceptance of the terms of this Agreement by Employee and the Company." (*Id.*) The signed signature page states, "This Agreement is the full and complete agreement related to the formal resolution of employment-related disputes." (*Id.*)

The first three pages of the Agreement state that this "Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq." and "all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial". (Exhibit 1-A.)[4] Disputes covered by the Agreement include "any past, present or future dispute arising out of or related to Employee's application for employment, employment and/or termination of employment with Quail Surgical & Pain Management Center or one of its affiliates, subsidiaries or parent companies ("Company") and survives after the employment relationship terminates." (*Id.*) The Agreement explains that it applies, "without limitation, to disputes regarding the employment relationship .

---

[4] The exhibit referenced accompanies Defendants' Motion to Compel Arbitration and to Dismiss the Action, Or, Alternatively, to Stay the Action Pending Arbitration. (ECF No. 10.)

. . , discrimination, termination or harassment and claims arising under the Civil Rights Act of 1964, . . . , Age Discrimination in Employment Act, . . . ,and state statutes, if any addressing the same or similar subject matters, and any other state statutory and common law claims. (*Id.*) The Agreement states, "you and Quail Surgical & Pain Management Center agree to resolve any covered legal disputes through mandatory arbitration instead of by way of court or jury trial." (*Id.*)

Defendants submit a declaration by Patricia Downs, the Director of Human Resources, that explains that King was presented with the Agreement in its complete form, and she executed and returned the signature page. The declaration notes that every employee is provided with the same Agreement. (Exh. 1.)[5]

Despite clear evidence that she agreed to arbitrate disputes with the Defendant, King has refused to submit to arbitration and alleges seven causes of action arising from her employment: (1) Discrimination Based on Age; (2) Creation of a Hostile Environment; (3) Breach of Contract; (4) Tortious Discharge; (5) Breach of Implied Covenant of Good Faith and Fair Dealing; (6) Intentional Infliction of Emotional Distress; and (7) Constructive Discharge. (ECF No. 6.) King details workplace issues that started in September 2020 when King's direct supervisor reassigned her to assist in ensuring that the facility followed new regulations and was prepared for an accreditation survey. King describes unsuccessful attempts to get a permanent work area and difficulties rotating temporary workspaces. (*Id.*) Her efforts to resolve the issues with Defendant Robertson, an administrator, were unsuccessful. King was close to retirement when these issues began. King also claims she had an oral agreement with the director of nursing that King would orient the individual who would eventually

---

[5] The exhibit referenced accompanies Defendants' Motion to Compel Arbitration and to Dismiss the Action, Or, Alternatively, to Stay the Action Pending Arbitration. (ECF No. 10.)

replace her and then resume her regular duties until she retired in June 2021. (*Id.*) Contrary to that understanding, Defendant Robertson advised her that after orienting her replacement, King would work as a floater, which is generally an entry-level position, working wherever and whenever needed.(*Id.*) King alleges that Defendant Robertson breached their oral contract.(*Id.*) King alleges that her husband drew up a real estate contract for Robertson at his request, but she was too afraid of retaliation to request compensation. (*Id.*) King alleges that Robertson generally had a plan to eliminate higher paid employees and created a hostile work environment. (*Id.*)

Defendants move this Court to dismiss King's action with prejudice or stay the action and compel arbitration. (ECF Nos. 10; 11.) They argue that the Federal Arbitration Act ("FAA") requires enforcement of the arbitration agreement and removes the Court's subject-matter jurisdiction over the Complaint. *Id.*

King opposes the motion to compel arbitration or dismiss and moves to strike the declaration of Patricia Downs, Director of Human Resources and Marketing Director at Northern Nevada and Quail under Federal Rule of Civil Procedure 12(f) as "redundant, immaterial, impertinent, or scandalous matter" from a pleading. FED. R. CIV. P. 12(f). (ECF No. 26.) King also moves to supplement this briefing with a pending piece of federal legislation. (ECF No. 29.)

II. **Analysis**

   A. **Legal Framework**

Issues regarding the validity or enforcement of an arbitration contract can be contractually delegated to an arbitrator, but challenges to the existence of a contract must be determined by the court prior to ordering arbitration. *See Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007). The Federal Arbitration Act ("FAA") requires courts to "direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). Accordingly, "the

FAA limits courts' involvement to 'determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Id.* (*quoting Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). Although these threshold "issues of arbitrability presumptively are reserved for the court, the parties may agree to delegate them to the arbitrator." *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011). The Ninth Circuit has held that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Language delegating to arbitrators the authority to determine "the validity or application of any of the provisions of" the section governing arbitration likewise demonstrates that the parties "clearly and unmistakably agreed to arbitrate the question of arbitrability." *Momot*, 652 F.3d at 988.

Because an agreement to arbitrate is a matter of contract, to determine whether a contract exists, courts "generally . . . apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Nevada courts have explained that the "Uniform Arbitration Act of 2000 (UAA), adopted in Nevada as Nevada Revised Statute 38.206–.248, does not require any particular formality to create an enforceable arbitration agreement," and an enforceable arbitration agreement can arise in circumstances where a party's signature is not required. *See Tallman v. Eighth Jud. Dist. Ct.*, 131 Nev. 713, 720–21 (2015) ("While NRS 38.219(1) requires that the arbitration agreement be 'contained in a record,' it does not require that the written record of the agreement to arbitrate be signed."); *U.S. Home Corp. v. Michael Ballesteros Tr.*, 134 Nev. 180, 182 (2018). As the party seeking to compel arbitration, Defendants bear the burden of proving that a valid agreement exists between them and Plaintiff. *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1220 (9th Cir. 2019); *see also* Nev. Rev. Stat. § 38.219(2) ("The court shall decide whether an

agreement to arbitrate exists."). "When considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, [the Court] should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Mwithiga v. Uber Techs., Inc.*, 376 F. Supp. 3d 1052, 1059 (D. Nev. 2019) (*quoting Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991)).

### B. The Court finds that a contract exists.

Upon review of the submitted evidence, the Court finds that Defendants have established that a contract exists. There is clear and unmistakable evidence that a contract exists. It is King's signature on the Agreement, signature on the letter attaching the Agreement, her decision not to opt out, and her continued employment which requires the conclusion that a contract exists. The signed signature page on the Agreement clearly put King on notice that she was signing the fourth page of a contract. Generally, one who signs a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument. *Cir. City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002)(enforcing arbitration clause against employee). King does not even unequivocally deny receiving the Agreement. She states, "to the best of my recollection, I never was presented with nor saw other pages of an agreement." (Exh 1.)[6] King does not present any specific facts showing that she did not receive the other pages of the agreement. King highlights for the Court a correspondence during discovery wherein Defendants provided what appears to be the first three pages of an identical Agreement but with Northern Nevada letter head. That does not support her general allegation that she does not recall being provided with the first three pages at all.

---

[6] The exhibit referenced accompanies Plaintiff's opposition to Motion to Compel Arbitration and to Dismiss the Action, or Alternatively, to Stay the Action Pending Arbitration. (ECF No. 17.)

7

1       Defendants, in contrast, have presented unequivocal evidence that King
2  received and signed the Agreement. King's personnel file contains only the signed
3  offer letter referencing the Agreement and the signed signature page of the
4  Agreement. The Director of Human Resources, Patty Downs, however, who has
5  personal knowledge of Defendants' business records and personnel files. (Exh.
6  1)[7] states that King was presented with the Agreement, executed the Agreement
7  (which King does not deny), returned the signature page of the Agreement (which
8  King also does not deny), and did not submit a request to opt out of the Agreement
9  (which King also does not deny). (*Id.*) "To satisfy the requirement of authenticating
10 or identifying an item of evidence, the proponent must produce evidence sufficient
11 to support a finding that the item is what the proponent claims it is." FED. R.
12 EVID. 901(a). Authentication can occur by considering "[t]he appearance,
13 contents, substance, internal patterns, or other distinctive characteristics of the
14 item, taken together with all the circumstances." FED. R. EVID. 901(b)(4). Downs
15 is a qualified person to testify about the Defendants' business records, and the
16 contents of the Plaintiff's personnel file fall within her sphere of responsibility.
17 Courts have found the declaration of human resource employees sufficient to
18 authenticate documents. *See Nanavati v. Adecco USA, Inc.*, 99 F.Supp.3d 1072,
19 1076 (N.D. Cal. 2014).

20      King alternatively argues the Agreement is void and unenforceable
21 pursuant to a Nevada statute that provides that an arbitration agreement must
22 include specific authorization for the provision [that] indicates that the person
23 has affirmatively agreed to the provision." NRS § 597.995(1). But NRS § 597.995
24 is preempted by the FAA. *MMAWC, LLC v. Zion Wood Obi Wan Trust,* 448 P.3d
25 568, 571 (Nev. 2019) (holding that the FAA preempts NRS 597.995 because "[the

---

[7] The exhibit referenced accompanies Defendants' Motion to Compel Arbitration and to Dismiss the Action, Or, Alternatively, to Stay the Action Pending Arbitration. (ECF No. 10.)

8

1 specific-authorization requirement] singles out arbitration provisions as suspect
2 and violates the FAA").

### C. The Agreement delegates the question of arbitrability

The Agreement delegates the question of arbitrability. Thus, the Court's role is limited to the issue of determining whether an arbitration agreement exists between King and Defendants. The Agreement incorporates AAA rules. *See Brennan*, 796 F.3d at 1130. The Agreement states that "disputes [are] to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial," and that "[s]uch disputes include without limitation disputes arising out of or relating to interpretation or application of this Agreement." (Exhibit A.)[8] *See Momot*, 652 F.3d at 988.

### D. Non-signatory defendants can enforce the Agreement.

Contrary to King's argument, under the doctrine of equitable estoppel, Defendants Northern Nevada and Robertson can enforce the Agreement even though the Agreement was between Quail and King.

Equitable estoppel is a doctrine that "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013). State law determines the applicability of equitable estoppel in the arbitration context. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009). "Nevada recognizes the doctrine of equitable estoppel in the context of determining when a nonsignatory to an arbitration agreement may compel or be compelled to arbitrate." *Dropp v. Diamond Resorts Int'l, Inc.*, Case No. 2:18-cv-00247-APG-GWF, 2019 WL 332399, at *5 (D. Nev. Jan. 25, 2019). "[A]pplication of equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and

---

[8] The exhibit referenced accompanies Defendants' Motion to Compel Arbitration and to Dismiss the Action, Or, Alternatively, to Stay the Action Pending Arbitration. (ECF No. 10.)

1  concerted misconduct by both the nonsignatory and one or more of the
2  signatories to the contract." *Id.* (*quoting Hard Rock Hotel, Inc.*, 2017 WL 881877,
3  at *2 (internal quotations omitted)). In *Dropp*, the court found that the plaintiffs'
4  allegations against the nonsignatory defendants were "substantially
5  interdependent and concerted" because they were able to influence and exercise
6  some level of control over the signatory defendants. *Id.* at *5.

7  The Agreement at issue was presented to King with a letter from Quail
8  containing an offer of continued employment. The offer letter explained that
9  Northern Nevada was acquiring Quail. Despite signing the letter accepting
10 continued employment with Quail/Northern Nevada, King states in her
11 declaration that she "found it confusing why Quail would, after all these years,
12 adopt an arbitration (ARC) agreement" and states that she "signed a Page 4 of an
13 agreement that [she] understood to be with Quail as was stated on the line above
14 my printed name/signature." (Exh. 1.)[9] These allegations are not relevant to the
15 question of whether Northern Nevada and Robertson can compel arbitration
16 under the Agreement. The allegations against Quail, the signatory, and Northern
17 Nevada and Robertson, the nonsignatories are "substantially interdependent and
18 concerted". Therefore, the arbitration agreement applies equally to all defendants.
19 *See Dropp*, 2019 WL 332399, at * 5.

20 **D. The balance of the issues raised by King should be addressed in**
21 **arbitration**

22 King raises multiple other arguments in opposition, all of which must be
23 decided by the arbitrator. She argues that this is a classic situation of unequal
24 bargaining power, that the Agreement is substantially and procedurally
25 unconscionable and one-sided, that her state law claims are severable and should
26 be remanded to state court, that the amount in controversy does not reach the

---

[9] The exhibit referenced accompanies Plaintiff's Opposition to Defendants' Motion to Compel Arbitration and to Dismiss the Action, or Alternatively, to Stay the Action Pending Arbitration. (ECF No. 17.)

threshold of $75,000 for federal jurisdiction, that the Parole Evidence Rule allows for extrinsic evidence to ascertain the true intentions of the parties, that the right to a jury trial is a property right, that the Agreement involve personal property and is thus void and invalid, that the right to a jury trial is subject to the rule against perpetuities, that *Id.*) These are issues that King can raise in arbitration, but that are inappropriate for the Court to reach. The Court notes, however, that this case was removed based on federal question jurisdiction (ECF No. 1), not diversity, so the amount in controversy argument is inapplicable. *See* 28 U.S.C. § 1332 (matter in controversy must exceed the sum of value of $75,000 for diversity jurisdiction).

### E. This Court will stay this action, instead of dismissing it.

According to the FAA, if a court determines that an issue is referable to arbitration pursuant to an arbitration agreement, the court should "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Alternatively, a court may dismiss a case where all claims are barred by an arbitration provision. *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988). Here, the Court finds it prudent to exercise its discretion to stay this action rather than dismiss.

### F. The Court declines to award attorney's fees to Defendants.

The Ninth Circuit has held that an award of attorney's fees "is appropriate when a party frivolously or in bad faith refuses to submit a dispute to arbitration." *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1383 (9th Cir. 1984). The Court finds that in challenging the sufficiency of Defendant's evidentiary support, King did not engage in frivolous or bad-faith conduct warranting reimbursement of Defendant's attorney's fees.

### E. The Court will not strike Ms. Down's declaration.

Federal Rule of Civil Procedure 12(f) provides authority for the Court to strike "redundant, immaterial, impertinent, or scandalous matter" from a

pleading. FED. R. CIV. P. 12(f). King's motion to strike Ms. Downs' Declaration and Exhibit A to her Declaration, which are attached to Defendants' motion to compel arbitration, challenges the trustworthiness of the declaration on multiple grounds. (ECF No. 26.) Ms. Downs' declaration is relevant to the issues in this matter and indicates that she has personal knowledge of the information declared. The Court declines to strike her declaration.

### F. The Court will not consider the supplemental memorandum.

King moves for leave to file a supplemental memorandum regarding a pending bill - The Forced Arbitration Injustice Repeal Act of 2022 ("FAIR Act of 2022") – a pending bill that may change the direction of federal arbitration policy. (ECF No. 29.) The supplemental memorandum has no legal relevance to this case and King's motion is therefore denied.

### III.   Conclusion

The Court finds that a valid agreement to arbitrate exists and compels King to engage in arbitration with Defendants. The Court does not reach the remaining issues raised by King in opposing Defendants' motions to compel arbitration or dismiss because those issues have been delegated to the arbitrator. The Court declines to strike Ms. Downs' declaration and declines to give King leave to file a supplemental memorandum. The Court exercises its discretion to stay this case. The Court declines to award Defendants attorney's fees.

IT IS THEREFORE ORDERED that Defendants motions to arbitrate or dismiss (ECF Nos. 10; 11) are DENIED in part and GRANTED in part.

Defendants' motions (ECF Nos. 10; 11) are DENIED to the extent that they seek to dismiss this action.

Defendants' motions (ECF Nos. 10; 11) are GRANTED to the extent that they seek to compel arbitration and stay this case pending the resolution of arbitration.

IT IS FURTHER ORDERED that this case is stayed in its entirety pending arbitration, subject to its re-opening by the parties at the conclusion of arbitration or upon a ruling that the case is inappropriate for arbitration.

The parties are directed to notify the Court within fourteen (14) days of any decision with respect to arbitration so that the court may either close this case or implement a new scheduling order with regard to discovery and motions.

IT IS FURTHER ORDERED that Plaintiff's motion to strike (ECF No. 26) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion or Leave to File a Supplemental Memorandum in Support of Plaintiff's Opposition to Defendants' Motion to Compel Arbitration and to Dismiss the Action (ECF No. 29) is DENIED.

DATED THIS 23rd Day of September 2022.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE